**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>James Edward Davis and Brenda Jean Davis,<br><br>Debtor(s). | C/A No. 15-05030-JW<br><br>Chapter 13<br><br>**ORDER ON MOTION TO ENFORCE ORDER REQUIRING LOSS MITIGATION AND IMPOSING SANCTIONS**<br>**(Shellpoint Mortgage Servicing)** |

This matter comes before the Court upon the Motion to Enforce Order Requiring Loss Mitigation ("Motion") filed by James Edward Davis and Brenda Jean Davis ("Debtors"). Upon review of the Motion, the Court entered an Order to Appear and Show Cause ("Order to Show Cause") requiring Shellpoint Mortgage Servicing ("Shellpoint") to appear before the Court to address the Debtor's allegations that Shellpoint has failed to comply with the terms of the Court's Order Requiring Loss Mitigation/Mortgage Modification. The Court held a hearing on the Motion and Order to Show Cause on August 9, 2016, which was continued to August 11, 2016. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[1]

**FINDINGS OF FACT**

1.  Debtors are the owners of certain real property that is better known as 1015 Spain Road in Marion, South Carolina, which serves as the Debtors' principal residence ("Principal Residence").

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

1

2. On March 7, 2006, Debtors executed and delivered an adjustable rate note ("Note") to Aames Funding Corporation d/b/a Aames Home Loan ("Aames"). To secure the Note, Debtors also executed and delivered a mortgage to Aames on the Principal Residence ("Mortgage").

3. On December 10, 2007, Debtors and Countrywide Home Loans Servicing LP executed a loan modification agreement, which modified the terms of the Note and Mortgage.

4. Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 22, 2015.

5. On October 6, 2015, Debtors filed a proposed Chapter 13 plan of reorganization ("Chapter 13 Plan"), which was served on the parties, including Shellpoint. In the Chapter 13 Plan, Debtors stated the following about its treatment of the Note and Mortgage:

> The Debtor is unable to resume payments to SHELLPOINT MORTGAGE SE at this time, and therefore, the Debtor's plan relies upon loss mitigation or a consensual mortgage loan modification.
>
> According to an Order Requiring Loss Mitigation/Mortgage Modification and no less than 7 days before the confirmation hearing, the Debtor, acting through Debtor's Counsel, will submit a complete application to SHELLPOINT MORTGAGE SE seeking loss mitigation or a consensual modification of the Debtor's mortgage loan through an applicable program, such as the Home Affordable Modification Program (HAMP). The subject mortgage loan is secured by real property located at:
>
> 1015 Spain Road, Marion, SC 29574
>
> Upon acceptance of the Debtor in a Trial Period Plan, Debtor's Counsel shall submit a proposed Order Approving Trial Period Plan,25 (sic) and the Debtor will commence payments directly to SHELLPOINT MORTGAGE SE in an amount equal to the payment called for under the Trial Period Plan of the applicable modification program.

2

> If the mortgage loan modification is approved, the Debtor shall directly pay SHELLPOINT MORTGAGE SE's allowed mortgage claim, including any prepetition and post petition amounts. No payment will be made by the Trustee on this secured claim. Upon completion of the Trial Period Plan or to seek final approval of the loss mitigation/mortgage modification, Debtor's Counsel shall submit a proposed Consent Order Allowing Mortgage Modification. If the loss mitigation or loan modification request is denied, Debtor's Counsel shall timely file a Mortgage Loan Modification/Loss Mitigation Report indicating that denial with the Court.
>
> In the event that (1) the request for mortgage loan modification (and any necessary documentation) is not submitted or is denied or (2) the Debtor fails to timely make the above referenced Trial Period Plan Payments, the Mortgage Creditor may, after 10 days' (sic) written notice to the Debtor, Debtor's Counsel, and the Trustee, submit an affidavit and proposed order seeking relief from the stay. However, the Mortgage Creditor may not obtain relief until its final consideration of loss mitigation or mortgage modification is concluded and reported to the Debtor and Debtor's Counsel.

6. On October 28, 2015, Debtor filed and served a Notice and Motion for Loss Mitigation/Mortgage Modification and, without objection, an Order Requiring Loss Mitigation/Mortgage Modification ("LM/MM Order") was entered on November 20, 2015.

7. On November 13, 2015, New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing as servicer of the Bank of New York Mellon executed a Lost Assignment Affidavit attesting that The Bank of New York as trustee for CWABS is the owner of the Note and Mortgage and that the original assignment from Aames to the Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Benefit of the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2007-SD1 had been lost or misplaced.

8. With no objection, the Chapter 13 Plan was confirmed on December 3, 2015.

9. On December 4, 2015, Debtors submitted their loss mitigation/mortgage modification ("LM/MM") application to Shellpoint through the Default Mitigation Management Portal ("Portal"). Within their application, Debtors expressed an intention to retain the Principal Residence.

10. Shellpoint opened Debtors' loan for review in the Portal on December 15, 2015.

11. Despite the Court-ordered deadlines established in the LM/MM Order to respond to Debtors in the Portal about the LM/MM application,[2] Shellpoint provided no communication on the loan review from December 15, 2015 to February 17, 2016. The application was not acknowledged as accepted, and no indication was provided as to whether the application was complete or needed additional documents. During this time period, Debtors' counsel messaged Shellpoint twice to receive an update regarding the status of the review.

12. On February 18, 2016, Shellpoint rejected the application in part because several of the documents submitted had expired and did not include Debtors' most recent information.

13. On March 2, 2016, Debtors submitted additional documents that contained more recent information through the Portal.

---

[2] The LM/MM Order required Shellpoint to take the following actions within seven days of the submission of Debtors' LM/MM application on the Portal:

(1) Acknowledge receipt of the Debtor's package;
(2) Provide the Debtors and Debtors' counsel with notice of any additional or updated documentation necessary for consideration of loss mitigation, including mortgage modification;
(3) Assign its designated counsel to the account on the Portal; and
(4) Provide the name, address and direct telephone number of the person responsible for the review on the Portal.

14. On March 3, 2016, Shellpoint again rejected the application stating that Debtors' hardship letter was not dated, the HAMP Request for Mortgage Assistance form had expired and was not fully completed, the paystubs of one of the Debtors were incomplete, the bank statements submitted by Debtors did not include the most recent month, and an IRS 4506-T tax form was missing for one of the Debtors. In addition, Shellpoint alleged that bank statements for two additional accounts were not submitted.

15. On March 10, 2016, Debtors' counsel submitted on the Portal an updated HAMP Request for Mortgage Assistance form, an IRS 4506-T tax form and an updated hardship letter.

16. The Court held a status hearing on the LM/MM review on March 11, 2016. At the hearing, Debtors' counsel and counsel for Shellpoint provided an update to the Court on the LM/MM review and indicated that the review was progressing. Based on these representations, the Court continued the status hearing to April 19, 2016.

17. On March 12, 2016, Shellpoint changed the status of the review in the Portal to "Incomplete Package." In addition Shellpoint requested a new IRS 4506-T tax form for one of the Debtors because the original form submitted expired. Shellpoint also requested complete pay stubs for one of the Debtors, the most recent bank statements of Debtors' bank accounts (including a letter of explanation for any deposits over $1,000 that might be listed in the statements), and a letter of explanation indicating that one of the Debtors does not have bank accounts.

18. On March 18, 2016, Debtors' counsel submitted a message on the portal indicating that Debtors only had three bank accounts and correcting Shellpoint's incorrect

5

belief that Debtors had five bank accounts.[3] Further, Debtors' counsel indicated in the message that the Debtors' bank accounts belong to both Debtors but that the bank statements list only one of their names. Debtors also submitted on the Portal their two most recent bank statements, a Uniform Borrower Assistance Form, a hardship letter and the Debtors' pay stubs.

19. Also on March 18, 2016, despite the explanation from Debtors' counsel, Shellpoint's representative continued to request that Debtors provide statements for their alleged five bank accounts and a letter of explanation that one of the Debtors does not have bank accounts. In addition, Shellpoint's representative requested the Debtors provide an updated IRS 4506-T tax form for one of the Debtors and a full 30 consecutive days of Debtors' pay stubs (as the Debtors' previous submission contained only 27 consecutive days of pay stubs).

20. On March 31, 2016, Debtors submitted to the Portal a full 30 consecutive days of pay stubs, an IRS 4506-T tax form and additional bank statements.

21. On April 6, 2016, Shellpoint's representative indicated in the Portal that the IRS 4506-T tax form was incomplete and was not signed or dated by Debtors. In addition, Shellpoint's representative continued to request bank statements for the Debtors' alleged five bank accounts and a letter of explanation for any of the Debtors' deposits over $1000.

22. On April 7, 2016, Debtors uploaded an updated IRS 4506-T tax form. In addition, Debtors' counsel messaged Shellpoint to clarify again that two of the bank

---

[3] Shellpoint requested additional bank statements from Debtors for four accounts that end in 9711, 7202, X971-1 and X720-2. On March 18, 2016 Debtor clarified that the accounts ending in 9711 and X971-1 were actually the same account. This was also the situation for the accounts ending in 7202 and X720-2. The Court notes that it has replaced a number in two of the accounts with "X" to ensure that this Order is in compliance with Fed. R. Bankr. P. 9037(a)(4).

6

accounts for which Shellpoint is requesting statements are duplicates of other bank accounts of Debtors for which Shellpoint has already received the statements. Shellpoint's representative responded on that same day, noting its error and requesting the Debtors resubmit the statements in a uniform format as Shellpoint's underwriter might not accept the non-uniform bank statements.

23. On April 11, 2016, Debtors' counsel indicated on the Portal that Debtors' bank charges them each time they receive older bank statements and requested that Shellpoint's representative explain to the underwriters that the statements are for the same accounts in different formats. In addition, Debtors' counsel resubmitted the bank statements, separating each statement by their account numbers.

24. On April 12, 2016, Shellpoint's representative indicated that he would submit the bank statements to the underwriter but that he would need a signed and dated letter of explanation explaining the difference in the format of the bank statements.

25. On April 18, 2016, Debtors uploaded a letter explaining the difference in format of the bank statements.

26. Also on April 18, 2016, Debtors' counsel filed a Mortgage Loan Modification Report, which stated that the LM/MM review was ongoing and that the "[p]arties are satisfied with the pace of the review and [the] parties expect the review to be concluded in the near future." Based on these representations, the Court removed the continued status hearing scheduled for April 19, 2016.

27. On April 20, 2016, Shellpoint's representative submitted the loan for review to another representative of Shellpoint, who served as an underwriter.

28. On May 3, 2016, Shellpoint's representative indicated that the underwriter could not complete the review as he needed the most recent bank statements for all of Debtors' bank accounts.

29. On May 16, 2016, Debtors submitted bank statements through the Portal.

30. On May 17, 2016, Shellpoint's representative indicated that the submitted bank statements submitted by Debtors did not include one month of statements for one of the Debtors' accounts. Also at that time, Shellpoint's representative alerted Debtors' counsel that several of the documents that had been submitted would expire shortly and will likely need to be resubmitted.[4]

31. Debtors submitted the additional bank statement on May 19, 2016.

32. On May 23, 2016, Shellpoint's representative alerted Debtors' counsel that one of the Debtors' pay stubs had expired and that several other documents would soon be expired.

33. On June 1, 2016, Debtors submitted updated documents.

34. On June 7, 2016, Shellpoint's representative indicated that the LM/MM review had been submitted to Shellpoint's underwriter for review.[5]

35. Shellpoint's representative indicated on the Portal on June 21, 2016 that the Debtors' IRS 4506-T tax forms would need to be updated. On that same day, Debtors uploaded the updated tax forms.

---

[4] It appears from a review of the Portal that for Shellpoint's LM/MM review, documents become expired or "stale" once 90 days has passed from the date indicated on the submitted document.

[5] It appears that Shellpoint is structured in such a way that an initial loss mitigation representative interacts with the borrower/debtor and collects the documentation for review. Then, after all of the needed documents are collected, they are passed to another Shellpoint representative who as the underwriter will then reviews the documentation to determine if Shellpoint should offer a modification or other loss mitigation options.

36. On June 22, 2016, Shellpoint's representative indicated that all required documents had been submitted on the Portal to complete the LM/MM review.

37. On June 29, 2016, Shellpoint issued a denial of loss mitigation/mortgage modification on the Portal. In the denial letter, Shellpoint states the following:

> Based on our review of your financial circumstances, although you may have a hardship, you are not eligible for the following Trial Period Plans:
>
> - HAMP Modification – We are unable to offer you a Home Affordable Modification because we service your loan on behalf of BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-SD1, an investor or group of investors. BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-SD1 has not given us the contractual authority to modify your loan under the Home Affordable Modification Program.
>
> - Standard Modification – We are unable to offer you a Modification because we service your loan on behalf of BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-SD1, an investor or group of investors. BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-SD1 has not given us the contractual authority to modify your loan under the Modification Program.
>
> You are conditionally approved for the programs listed below. Please call us . . . to discuss further documentation required for these programs.
>
> - Short Sale
>
> - Deed in Lieu of ForeclosureThough (sic)[.]

Shellpoint's representative also indicated at both the hearing and through a message in the Portal that Debtors may participate in a forbearance repayment plan, which would require the Debtors to catch up all of the mortgage arrearage within one year.

38. Debtors filed the Motion on July 6, 2016 alleging that Shellpoint did not comply with the LM/MM Order because the loan modification request was denied for lack of authority and that there was "no justification to put [Debtors] through all of the work

9

and delays over the past 7 months."[6] Debtors requested the Court order that Shellpoint to process the loan modification and properly review Debtors for a loan modification as well as award sanctions and attorney's fees for Shellpoint's failure to properly process the loan modification on the Portal.

39. On July 8, 2016, the Court entered the Order to Show Cause that required Shellpoint to appear before the Court to address Debtors' allegations that Shellpoint has not complied with terms of the LM/MM Order and show cause why it should not be sanctioned. Debtors' counsel served the Order to Show Cause on Shellpoint and its counsel on July 13, 2016 as indicated by the Certificate of Service filed on July 13, 2016.

40. On July 26, 2016, Shellpoint updated the status of the Portal to indicate that the review was denied due to "Investor does not qualify for a modification due to investor not participating."[7]

41. A hearing was held on the Motion and Order to Show Cause on August 9, 2016. At the hearing, Aldo Jimenez ("Jimenez"), a loss mitigation specialist at Shellpoint, testified on behalf of Shellpoint. Jimenez testified that Debtors' loan could not be modified because the sale and servicing agreement dated April 1 2007 between CWABS, Inc. as depositor, CWABS Asset-Backed Notes Trust 2007-SD1 as issuer, Countrywide Home Loans, Inc. as seller, Countrywide Home Loans Servicing LP as master servicer and the Bank of New York as indentured trustee ("Sale and Servicing Agreement") did not provide

---

[6] The Motion was properly served on Shellpoint as the certificate of service filed with the Motion indicates that it was served on the address for notices as indicated by Shellpoint in its proof of claim as well as the mailing address listed on CM/ECF for Shellpoint's counsel.

[7] From the Court's review, it appears that this statement contains an error and that Shellpoint intended for this statement to read that Debtors do not qualify for a modification due to the loan's investor not participating.

10

the master servicer,[8] or its agent Shellpoint as the sub-servicer, the contractual authority to modify the loan. In support, Shellpoint presented excerpts of the Sale and Servicing Agreement into evidence, which were admitted without objection. Jimenez also testified that the fact that loan could not be modified due to the lack of contractual authority should have been disclosed upfront at the beginning of the LM/MM review by Shellpoint; however, he was not sure why that was not disclosed early on in the Debtors' LM/MM review. Jimenez noted that Shellpoint's lack of contractual authority to modify certain loans is documented in Shellpoint's policies and procedures.

42. The August 9, 2016 hearing was continued to August 11, 2016 to allow the parties additional time to discuss settlement of the Motion. At the August 11, 2016 hearing, the parties indicated that a settlement could not be reached.

43. On August 22, 2016, Debtors filed a proposed amended Chapter 13 plan that provides that Debtors will cure both their pre-petition and post-petition arrearage on Shellpoint's claim over the life of the plan, while maintaining direct regular payments to Shellpoint, beginning with the September 2016 payment.

44. On August 25, 2016, counsel for Shellpoint indicated by an email to the Court that Shellpoint does not object to Debtors' proposed amended Chapter 13 plan.

## **CONCLUSIONS OF LAW**

Debtors' Motion requests that the Court compel Shellpoint to process Debtors for a loan modification as well as award sanctions and Debtors' attorney's fees associated with the loss mitigation/mortgage modification review.

---

[8] It appears from the Claims Register in this case that Bank of America, N.A. is the master servicer because Shellpoint filed its proof of claim on behalf of Bank of America, N.A.

11

I.     *Request to Compel Debtors to be Processed for a Loan Modification*

After the filing of the Motion, Debtors filed a proposed amended Chapter 13 plan that does not provide for LM/MM.  Based on this amended plan, it appears that Debtors are no longer pursuing LM/MM as Debtors now propose to address their mortgage arrearage by curing it over the life of the plan.[9]  Because Debtors are no longer pursing LM/MM, the matter is moot and it is not necessary for the Court to determine whether, under these circumstances, it has the authority to and whether it should compel Shellpoint to process Debtors for a loan modification.

II.     *Request for Sanctions and Attorney's Fees*

Next, the Court must address the issue of sanctions and attorney's fees.  The LM/MM Order provides that "Debtors, Debtors' Counsel, the Mortgage Creditor and its counsel, and any participating co-borrower or obligor shall . . . engage in Loss Mitigation/Mortgage Modification process in good faith, and that the failure to do so may result in the scheduling of a hearing to consider sanctions or other relief . . . ."  The LM/MM Order was not appealed and is therefore a final order.  Further, the LM/MM Order incorporates Amended Operating Order 15-01, also known as Judge Waites' Chamber Guidelines, which outlines the duties of the parties participating in the Loss Mitigation and Mortgage Modification Program.  The Amended Operating Order 15-01 requires that:

---

[9]     The Court notes that Debtors' confirmed Chapter 13 Plan provides that:

> In the event that . . . the request for mortgage loan modification (and any necessary documentation is not submitted or is denied[,] . . . the Mortgage Creditor may, after 10 days' written notice to the Debtor, Debtor's Counsel, and the Trustee, submit an affidavit and proposed order seeking relief from the stay.

Based on the conduct of Shellpoint as outlined in this Order, the Court is not inclined to enter any proposed order seeking relief from the stay if Shellpoint were to submit such an order based on this provision of the prior Chapter 13 Plan.

12

> All parties are required to act in good faith throughout the LM/MM process. Debtor(s)' Counsel and counsel for the Mortgage Creditor shall immediately report to the Court the other party's failure to timely comply with any of the LM/MM procedures or deadlines or failure to otherwise act in good faith . . . .

Upon the entry of the LM/MM Order, Debtors and Shellpoint had a duty to act in good faith during the LM/MM process.

In the present matter, the Court finds that Shellpoint did not comply with the requirement to act in good faith. First, the LM/MM Order required Shellpoint to "[p]rovide the Debtors and Debtors' Counsel with notice of any additional or updated documentation necessary for consideration of Loss Mitigation, including mortgage modification" within seven days after Debtors' submission of their LM/MM application on the Portal. As Debtors submitted their LM/MM application on December 4, 2015, Shellpoint was required to respond to Debtors with any missing or additional documentation by December 11, 2015. Despite this deadline, Shellpoint failed to respond to the Debtors regarding additional documentation until February 18, 2016, more than two months after the original deadline. No explanation or testimony was provided by Shellpoint to explain why this delay occurred.

This unwarranted delay prejudiced Debtors. By the time that Shellpoint reviewed Debtors' LM/MM application, most of the Debtors' supporting documentation had expired or become stale, requiring Debtors and their counsel to obtain updated copies of the numerous supporting documentation and to resubmit them on the Portal. This created unnecessary work and expense for both Debtors and their counsel as most of the documentation was ripe for review when it was originally submitted, but expired after Shellpoint failed to review the application in a timely fashion.

13

Second, Shellpoint failed to comply with the requirement to act in good faith when it failed to disclose at the outset of the LM/MM process that Debtors' loan could never be modified because Shellpoint and the master servicer lacked the contractual authority to modify Debtors' loan. See In re Bambi, 492 B.R. 183, 188 (Bankr. S.D.N.Y. 2013) ("In Loss Mitigation, where there is no appointed mediator overseeing the process, parties are expected to communicate openly with each other regarding the status of Loss Mitigation process. Although parties need not disclose confidential information, they should share basic information, including . . . the basic parameters that the Debtor must meet in order to be considered for a loan modification."). Shellpoint's own representative admitted in his testimony that Shellpoint should have disclosed Debtors' ineligibility to obtain a mortgage modification upfront at the beginning of the LM/MM process. This failure to disclose further prejudiced Debtors during the LM/MM process. Like most of the debtors who participate in the Loss Mitigation and Mortgage Modification Program, Debtors' intent was to seek a beneficial mortgage modification through the LM/MM process.[10] Debtors and their counsel spent significant time and effort (over seven months) working to obtain the documentation requested by Shellpoint and to proceed in good faith with the LM/MM process. However, despite all of their efforts to submit the required documentation, that documentation was not needed for Shellpoint to make a determination to deny Debtors of a mortgage modification. This case is a prototypical example of the conduct and communication issues which have plagued LM/MM reviews and motivated this and other

---

[10] For example, Debtors indicated in their Chapter 13 Plan that they could no longer resume regular mortgage payments in their current amount. In addition, their LM/MM application indicated that they were only interested in property-retention options. Further, Debtors named certain forms in the Portal that indicated their intent to obtain a mortgage modification, including the "HAMP Request for Modification and Affidavit (RMA)."

14

courts to implement a court-supervised Loss Mitigation and Mortgage Modification Program as a means to encourage transparent and efficient LM/MM reviews.[11]  It is likely that if Shellpoint had disclosed at the outset that a modification was not available to the Debtors, Debtors would not have invested the time and money in pursuing LM/MM.

As a result of this failure to disclose, Debtors have unnecessarily incurred attorney's fees relating to the LM/MM process as well as delayed the treatment of Shellpoint's claim, which has increased the amount of Debtors' total arrearage and made a 12-month forbearance repayment plan unaffordable for Debtors.  This has left Debtors with fewer options to address the arrearage than if the disclosure was made at the commencement of the LM/MM process.

Shellpoint and Debtors have now agreed that Debtors may cure both their pre-petition and post-petition arrearage on Shellpoint's claim through the life of an amended chapter 13 plan.  The Court believes that in such instances of delay and lack of good faith by a mortgage creditor, a debtor should have the maximum amount of time that is reasonable to cure a default or otherwise address the mortgage creditor's debt in a chapter 13 plan.  However, on its own, this agreement reached by Debtors and Shellpoint to cure

---

[11]  As the Consumer Financial Protection Bureau recently observed:

> The majority of consumers submitting mortgage complaints complained about problems they face when they are unable to make payments, such as issues about loan modification and foreclosures. In particular, consumers complain about delays and ambiguity in the review of their modification applications. . . .
>
> Consumers consistently describe trouble communicating with their servicer. Complaints where consumers assert they sent documents but companies report never having received them are common. Consumers say that attempts to follow up on these issues typically result in the company requesting the consumer re-send the documents or forms in question.

See Consumer Financial Protection Bureau, *Monthly Complaint Report Vol. 3* 11–12 (September 2015), available at http://files.consumerfinance.gov/f/201509_cfpb_monthly-complaint-report-vol-3.pdf.

Shellpoint's arrearage over the life of the chapter 13 plan is not sufficient to fully address the prejudice caused to Debtors and to deter similar future conduct by Shellpoint and other mortgage creditors.

Therefore, the Court finds it is also appropriate to award Debtors' attorney's fees associated with the LM/MM review due to Shellpoint's failure to act in good faith during the LM/MM process. See In re Hosking, 528 B.R. 614 (Bankr. S.D.N.Y. 2015) (sanctioning a mortgage creditor by awarding the debtor's attorney's fees associated with loss mitigation in part because the mortgage creditor failed to communicate at the outset of the loss mitigation process that the debtor was required to make a 25% down payment to obtain a loan modification); In re Furino, C/A No. 12-29799, 2014 WL 789116 (Bankr. D.N.J. Feb. 26, 2014) (imposing sanctions on a mortgage creditor when it failed to act in good faith when participating in the court's loss mitigation program); Bambi, 492 B.R. at 189 (sanctioning a mortgage creditor and finding it had not acted in good faith in part because, "[a]t the outset [of the LM/MM review], [the mortgage creditor and its servicer] solicited documents from the Debtors, filed status letters, and appeared at status hearings for almost eight months before finally informing the Debtors and the Court that [the mortgage creditor] did not modify loans"). The Court has the power to hold Shellpoint in contempt and sanction it for violating the Court's orders under the Court's authority provided by 11 U.S.C. § 105 as well as the Court's inherent authority to regulate the litigants that appear before it. See In re Weiss, 111 F.3d 1159 (4th Cir. 1997) ("A federal court also possesses the inherent power to regulate litigants' behavior and to sanction a litigant for bad-faith conduct."); In re Walters, 868 F.2d 665, 669 (4th Cir. 1989) (recognizing that 11 U.S.C. § 105(a) allows Courts to sanction a party for civil contempt).

Debtors' counsel did not provide a breakdown of the time spent on these matters, apparently relying on the loss mitigation/mortgage modification no-look fees allowed in this District.[12] The LM/MM Order reflects that Debtors and their counsel entered a separate retainer agreement, in which the no-look fee of $1,500 for assisting debtors with the LM/MM process was to be paid directly to Debtors' counsel by the Debtors. Further, the Court allows a supplemental no-look fee of $500 for filing pleadings and handling a contested hearing associated with a Motion to Enforce the Order Requiring Loss Mitigation.[13] Therefore, the Court finds that Debtors and their counsel shall be **awarded an attorney's fees in the amount of $2,000** to be paid by Shellpoint to Debtors' counsel in certified funds no later than 10 days after the entry of this Order.[14]

Further, the Court finds that imposing **an additional civil contempt sanction of $1,000** is necessary to deter similar conduct in the future by Shellpoint.[15] This sanction shall be payable in certified funds no later than 10 days after the entry of this Order either to the Clerk of Court for the United States Bankruptcy Court for the District of South Carolina, or, at Shellpoint's election, to South Carolina Legal Services,[16] or the South Carolina Bar Foundation,[17] non-profit entities which provide for programs serving indigent parties before this and other courts.

---

[12]     As Debtors did not present evidence of lost wages, other expenses or emotional distressed caused by Shellpoint's actions, the Court will only consider for the LM/MM attorney's fees incurred by Debtors in determining the extent of Debtors' damages resulting from Shellpoint's conduct.

[13]     This supplemental no-look fee for loss mitigation/mortgage modification was announced and published on the April 27, 2016 Judges' Corner Announcement, which is available on the Court's website at http://www.scb.uscourts.gov/judges_corner.html.

[14]     Upon receiving the certified funds from Shellpoint, Debtors' counsel shall remit to Debtors any funds previously paid to him by Debtors for attorney's fees associated with LM/MM unless otherwise agreed upon by Debtors.

[15]     The Court finds that the award of $2,000 in attorney's fees as well as the $1,000 civil contempt sanction is the minimum amount necessary to deter similar conduct in the future.

[16]     South Carolina Legal Services, P.O. Box 1445, Columbia, SC 29201

[17]     SC Bar Foundation, P.O. Box 608, Columbia, SC 29202

Shellpoint shall file a Certification of Compliance with proof of remittance as to the payments required under this Order **within ten (10) days from the entry of this Order.** Upon Shellpoint's filing of the Certification of Compliance, the Court will further consider dissolution of the Order to Show Cause.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
September 6, 2016

**FILED BY THE COURT**
**09/06/2016**



Entered: 09/06/2016

US Bankruptcy Judge
District of South Carolina